The Honorable Gilbert Baker State Senator #17 Cooper Lane Conway, AR 72034
Dear Senator Baker:
You have presented several questions related to liability for the costs of emergency medical service.
As a basis for your first two questions, you have asked me to assume the following factual scenario:
 A law enforcement officer comes into contact with an individual who has a self-inflicted medical condition (such as a personal injury or a drug overdose). The law enforcement officer takes the individual into protective custody after making an assessment that the individual is in need of medical attention.
In connection with the above scenario, you have asked:
 (1) If the law enforcement officer calls for an emergency response team unit to come and assess the person in protective custody, is the law enforcement agency liable for the expenses incurred by the emergency response team unit?
 (2) If the person is released from protective custody by the issuance of a citation prior to being transported to a treatment facility, is the law enforcement agency liable for the expenses incurred as a result of the transport and resulting treatment?
As a basis for your third and fourth questions, you have asked me to assume the following factual scenario:
 A law enforcement agency receives a report of an accident with possible injury from a concerned citizen who was not a part of the accident. The law enforcement agency calls for an ambulance to be sent to the accident location. Upon arrival, the emergency response team unit finds that there is no one in need of medical attention.
In connection with the above scenario, you have asked:
 (3) Is the law enforcement agency liable for the expenses incurred by the emergency response team?
 (4) Are individuals who were involved in the accident but did not request an ambulance liable for the cost incurred by the emergency response team?
RESPONSE
State law does not explicitly address the issues raised by your questions. It is my opinion that the answers to these questions will ultimately depend upon a number of specific facts about the situation, as explained more fully below.
Although state law does grant to medical service providers, including providers of ambulance service, a lien for the value of service provided to a patient for the treatment of injuries suffered through the fault or neglect of someone other than the patient himself, see the Medical, Nursing, Hospital, and Ambulance Service Lien Act, A.C.A. § 18-46-101 etseq.,[1] state law does not address the question of who is responsible for the cost of emergency medical services that are provided to a person who has a self-inflicted injury or condition. Although I believe that it is reasonable to conclude generally, on the basis of the principle ofquantum meruit, that the person who receives treatment should ultimately be responsible for payment, I believe that this issue, as well as the issue of who is responsible for costs in situations in which an emergency provider responds but is not required to render treatment, will be significantly impacted by and will depend largely upon numerous facts about the situation. Among the pertinent factual issues are the following: the location of the incident (e.g., inside/outside city limits), the jurisdiction of the law enforcement agency (e.g., city, county, state, etc.), the age and circumstances of the injured person (e.g., juvenile, maltreated adult, etc.), the injured person's insurance coverage, the identity and nature of the emergency response team (e.g.,
private entity, governmental entity, etc.), the provisions of any ordinances or regulations that govern the provision of emergency medical service by the particular provider in the particular jurisdiction, and the nature and terms of any agreement that may govern the situation (e.g., a contractual agreement between the emergency response team and the city or county or between the emergency response team and the law enforcement agency, or an interlocal agreement between governmental entities).
I will not attempt to construct and analyze the various possible combinations of these factors and the legal implications thereof. However, I will point out certain legal provisions and principles of which you should be cognizant in addressing the particular facts.
Emergency medical services may be provided pursuant to a number of different types of legal and contractual arrangements. For example, cities of the first class are authorized to provide and regulate emergency medical services. See A.C.A. § 14-43-601(b). See also A.C.A. §14-266-101 et seq. (the "Municipal Ambulance Licensing Act," under which cities can grant an exclusive franchise to a emergency services provider. Counties likewise are authorized to provide and regulate such services. See A.C.A. § 14-14-802, -803, -804; A.C.A. § 20-13-301 through 307. In addition, both cities and counties are authorized to create public facilities boards to administer emergency medical services. A.C.A. § 14-137-101 through -123. Boards created pursuant to this authority can be granted broad power to contract and otherwise govern the terms of the provision of services, including fees to be charged for such services. A.C.A. § 14-137-111. Emergency medical service can also be provided by a fire protection district duly organized pursuant to A.C.A. § 14-284-101et seq. Such fire protection districts are authorized to provide ambulance service. A.C.A. § 14-284-102. Finally, governmental entities can enter into interlocal agreements pursuant to the Interlocal Cooperation Act, A.C.A. § 25-20-101 et seq., for the provision of emergency medical service, or they may enter into standard contracts for the provision of such service.
Because of the wide variety of sources of authority for the provision of emergency medical service, outlined above, the permissible means of collecting payment for the provision of such service will vary widely, depending upon the ordinances, regulations, or contractual terms governing the provision of such service. Moreover, under some of these arrangements, the provision of service may be funded through fees and assessments, which could conceivably be used to subsidize the service to a certain extent. The applicable ordinances, regulations, or contracts must be consulted to determine the specific arrangement and its impact upon how the cost of service is assessed and payment collected. The applicability of these various provisions may be further impacted by such questions as the location of the incident, whether the law enforcement officer was acting within the scope of his or her jurisdiction, and the emergency response team's relationship to that jurisdiction (for example, whether it was an arm of that same jurisdiction). Another factor that will be pertinent is whether the injured person was covered by a policy that required direct reimbursement to the emergency service provider pursuant to A.C.A. § 23-79-148.
I also note that various provisions of law specifically provide for the immunity of law enforcement personnel who act in good faith in taking certain individuals into emergency protective custody and in ordering emergency medical service under certain circumstances. For example, if a duly authorized law enforcement officer takes a maltreated adult into emergency protective custody pursuant to the provisions of A.C.A. §5-28-301, he or she (and the law enforcement agency) is entitled to immunity from liability and suit for civil and criminal damages. See
A.C.A. § 5-28-215. Similarly, law enforcement officers (and their agencies) who take maltreated children into protective custody pursuant to A.C.A. § 12-12-516 and who consent to medical services for the child pursuant to that authority are entitled to immunity from both civil and criminal liability and suit. A.C.A. § 12-12-517. Accordingly, the particular circumstances under which the individual is taken into protective custody and rendered emergency medical service must be taken into consideration in determining who is ultimately responsible for payment for the services. A pertinent factor of these circumstances will be the individual's age and how the injury or condition was incurred.
The above discussion indicates that numerous factual matters will impact upon a determination of who can be held responsible for the cost of emergency medical service. These factors must be considered and evaluated in order to determine ultimate responsibility in the situations you have described.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:SBA/cyh
[1] The lien is on any claim to which the patient is entitled because of the injury.